437 A.2d 1236

Joseph A. BANYAS, III, Appellant,

v.

**LOWER BUCKS HOSPITAL and Young Kim, M.D. and C.R.N.A. Tanya O'Neill and Alvin Merkin, M.D.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed Dec. 4, 1981.

Steven E. Wolfe, Bensalem, for appellant.

Arthur B. Walsh, Doylestown, for Lower Bucks, appellee.

Allan C. Molotsky, Philadelphia, for Kim, etc., appellees.

Before BROSKY, WATKINS and MONTGOMERY, JJ.

BROSKY, Judge:

This suit was instituted by appellant who seeks damages for mental distress which he claims appellees caused him to suffer. The complaint contained counts charging appellees with both intentionally and negligently inflicting emotional distress upon him. The lower court sustained preliminary objections in the nature of a demurrer and dismissed the complaint. We affirm the order as to the negligence counts but reverse as to the count alleging an intentional infliction of mental distress by appellees.

Our Supreme Court has summarized the guidelines we are to follow in determining whether the preliminary objections were properly granted.

It is axiomatic in the law of pleading that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom. *Yania v. Bigan*, 397 Pa. 316, 155 A.2d 343 (1959); *Byers v. Ward*, 368 Pa. 416, 84 A.2d 307 (1951). Conclusions of law and unjustified inferences are not admitted by the pleading. *Lerman v. Rudolph*, 413 Pa. 555, 198 A.2d 532 (1964). Starting from this point of reference the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained. Finally, where the propriety of an order sustaining a demurrer is being reviewed by a court of last resort, the fact that the theory for recovery relied upon has not been previously sanctioned, is not conclusive. It must be remembered that "[e]very cause of action . . ., however, was once a novel

claim and the absence of Pennsylvania authority for appellant's proposition is not an end to the issue." *Papieves v. Kelly*, 437 Pa. 373, 376–77, 263 A.2d 118, 120 (1970). *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979).

We have paraphrased the complaint's allegation of facts pertinent to this appeal as follows. On July 27, 1977, Thomas Lavin was admitted to the emergency room of Lower Bucks Hospital complaining of facial and jaw injuries which resulted from an altercation with Joseph A. Banyas, III. Mr. Lavin was admitted to the hospital for surgical reduction of what was diagnosed as a fractured jaw. On July 28, 1977, Mr. Lavin was taken to the operating room for the reduction and was placed under the care of Alvin Martin, M.D., Young Kim, M.D., and C.R.N.A. Tanya O'Neill. Mr. Lavin died at that time due to the negligence of the named defendants (the hospital and persons named in previous sentence), their agents, servants or employees acting within the course and scope of their employment. The death of Thomas Lavin was due solely to the acts of the defendants and was due to no act or failure to act on the part of Mr. Banyas.

The complaint alleges three causes of action, all of which incorporate the above recited factual allegations. The first count charges that the defendants knowingly, wilfully, recklessly and intentionally prepared records indicating that Mr. Lavin's death was due solely to the injuries inflicted upon him by Mr. Banyas. Banyas stated in his complaint that as a result of the wrongful preparation of records, he was charged with the crimes of aggravated assault, simple assault, recklessly endangering another person, murder, third degree murder and voluntary manslaughter. He seeks recovery for severe mental anguish and emotional stress which he claims to have suffered as a result of having been charged with the above-mentioned crimes.

The second count charges that Mr. Banyas suffered damages as a result of what he claims was the negligent,

reckless and wanton preparation of records by the defendants.

The third count traced the cause of Mr. Banyas' being charged with crimes to the death of Mr. Lavin and sought damages for what the complaint alleged to be the negligence which caused his death.

■ The intentional infliction of mental distress is an actionable wrong in Pennsylvania. See *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970); *Jones v. Nissenbaum, Rudolph and Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (1979).

Section 46 of the Restatement (Second) of Torts § 46 (1965) provides in part:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Comment d to Section 46 explains,

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!"

As the Supreme Court said in *Jones,* supra, "It is apparent that the gravamen of this tort is that the conduct complained of must be of an extreme or outrageous type." Id., 244 Pa.Super. at 383, 368 A.2d at 773.

We have found the Third Circuit Court's opinion in *Chuy,* supra, helpful in our analysis of this case. In *Chuy,* a professional athlete sought recourse for mental distress he experienced as a result of the publication of a newspaper

article that falsely stated that he suffered from a potentially fatal disease. The plaintiff contended that making such a false statement constituted "extreme and outrageous conduct." The court found sufficient evidence to support his claim and wrote, upholding motions for judgment N.O.V. and for new trial that,

> Accepting as we must at this stage Chuy's version of the events, we have a statement to the press by a physician assumed to know the facts that a person is suffering from a potentially fatal disease, even though the physician was aware that the person was not stricken with that condition. This, of course, constituted intolerable professional conduct. 595 F.2d at 1274.

The court continued explaining that

> Reckless conduct causing emotional distress renders an actor as liable as if he had acted intentionally... [I]f Dr. Nixon's statements were intentional, he need not have been *aware* of the natural and probable consequences of his words. It is enough that Chuy's distress was substantially certain to follow Dr. Nixon's rash statements. Intentionally to propagate a falsehood, the natural and probable consequences of which will be to cause the plaintiff emotional distress is equivalent, in the language of the Restatement comment i, to the "deliberate disregard of a high degree of probability that the emotional distress will follow."

595 F.2d at 1265.

■ If the appellees in the present appeal, defendants below, in fact intentionally propagated a falsehood when they wrote that Mr. Lavin's death was attributable solely to Mr. Banyas, we believe that they could also be found liable for the emotional distress suffered by Mr. Banyas. We would find an intentional misstatement of the cause of death to be intolerable professional conduct and extreme and outrageous. Certainly, Mr. Banyas was substantially certain to suffer emotional distress following such a report.

Therefore, if proven, the facts alleged by appellant in this first count would entitle him to relief.

We come to a different conclusion as to the remaining counts, both of which are based on averments of negligence.

■ The second count seeks recovery for the negligent infliction of mental distress and is based on the factual allegations previously recited.

The Restatement (Second) Torts, § 436 provides:

### § 436. Physical Harm Resulting from Emotional Disturbance

(1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.

(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

(3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence.

Restatement (Second) Torts, § 436A states:

### § 436A. Negligence Resulting in Emotional Disturbance Alone

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensa-

ble damage, the actor is not liable for such emotional disturbance.

Comment A to the Section explains that "Under the rule stated in this Section, the negligent actor is not liable when his conduct results in the emotional disturbance alone, without the bodily harm or other compensable damage." See also *Sinn v. Burd*, supra, 486 Pa. at 175–177, 404 A.2d at 687, 688 (Roberts, J. dissenting).

■ Appellant's complaint avers no physical harm. We find it does not state a cause of action for negligent infliction of emotional distress. See *Niederman v. Brodsky*, 436 Pa. 392, 261 A.2d 84 (1970), and *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), both of which discuss this tort. In each case, the opinion states that damages were sought for physical and emotional injuries.[1]

Until 1970, our courts required as an element of the tort that the plaintiff has suffered a physical impact from a negligent force. See *Sinn v. Burd*, supra, at 675, 676. *Neiderman*, supra, altered this rule to the extent of granting a cause of action to a plaintiff within the "zone of danger" of such impact. *Sinn* abolished that requirement where a mother witnesses the violent death of her small child and suffers injury therefrom. The later case, *Hoffner v. Hodge*, 47 Commonwealth 277, 407 A.2d 940 (1979), emphasizes the narrowness of the holding in *Sinn v. Burd.*

In sum, given the restrictions that our courts have consistently imposed on recovery for this tort, we would err in finding a cause of action without an allegation of bodily harm.

Appellant's third count seeks damages for what the complaint alleges was the negligent causation of Mr. Lavin's death.

1. Although Mr. Justice Roberts states in his dissent in *Sinn v. Burd*, that the complaint alleged only emotional injuries, the majority opinion states that plaintiff sought recovery for physical and mental injuries. We must assume that the decision of the court was based on the belief that such injuries were alleged.

It is axiomatic that a finding of negligence requires a finding that the defendant breached a duty owed to the plaintiff. The complaint does not allege nor do we find a duty owed to Mr. Banyas as to the care rendered to Mr. Lavin.[2]

Our Supreme Court discussed the concept of duty in *Sinn v. Burd*, supra. Citing *Prosser Palsgraf Revisited*, 52 Mich. L.Rev. 1, 14–15 (1953), the court noted:

> In the end the court will decide whether there is a duty on the basis of the mores of the community, "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind." Id., 486 Pa. at 164, 404 A.2d at 681.

It would be impractical to find a duty here. It was not Mr. Lavin's death that caused any emotional distress suffered by appellant, but, rather, his being accused of causing that death which may have harmed him. Such accusation did not arise from the fact of the death, but from the facts surrounding the altercation between Messrs. Lavin and Banyas, and perhaps, from an explanation of the cause of death given by the medical personnel.

Finding no duty owed to Mr. Banyas as to care given to Mr. Lavin, we find that appellant did not state a cause of action in the third count of his complaint.

The order of the lower court granting appellee's motion for demurrer on the first count is reversed; the order is affirmed as to counts two and three.

**2.** Parenthetically, we note that if appellant were found to have such a cause of action, so would any number of persons who suffered emotional damages as a result of Mr. Lavin's death.