**GREAT WEST LIFE ASSURANCE COMPANY, Plaintiff,**

v.

**Mark LEVITHAN, Defendant.**

Civ. A. No. 93–CV–1560.

United States District Court, E.D. Pennsylvania.

Oct. 22, 1993.

James Michael Beck, Pepper, Hamilton & Scheetz, Philadelphia, PA, for plaintiff.

Francine D. Wilensky and James C. Schwartzman, James O. Schwartzman & Associates, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an action for restitution and declaratory relief under 28 U.S.C. § 2201 by the Plaintiff, Great West Life Assurance Company, due to the alleged insurance claim fraud by the Defendant, Mark Levithan. Presently before the Court are the Plaintiff's Motion to Dismiss Counts III, VI, VII and X of Defendant's Counterclaim and Plaintiff's Motion to Strike various responses in Defendant's Answer. Jurisdiction is premised upon diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332. For the reasons set forth below, Plaintiff's Motion to Dismiss will be granted in part and denied in part, Defendant will be granted leave to amend Count VII, and Plaintiff's Motion to Strike will be granted in part and denied in part, and paragraphs 6, 10–71, 74–88, 91–95, 98–99, 102–103, 118 and 130 of Defendant's Answer will be stricken.

### BACKGROUND

The facts, as alleged in the complaint, are that the Plaintiff issued a Disability Income Policy to the Defendant which provided coverage of $5,100 per month in disability benefits and $900 per month under a Social Insurance Conditional Benefit Rider, both to continue until Defendant turned sixty-five. On

May 22, 1991, Plaintiff received an Individual Disability Claim Report from the Defendant which asserted a claim under the Disability Income Policy for a disability which was alleged to have begun on or about December 3, 1990. The Plaintiff, upon receiving the claim report, activated the Waiver of Premium Benefit in the Policy, which provides that an insured will not be obligated to pay premiums during the period of disability, and allegedly reimbursed the Defendant for the premiums paid during the period the Defendant claimed to be disabled. Plaintiff paid benefits of $6,000 per month to the Defendant from August 3, 1991 to October 3, 1992, totalling $84,000.

Plaintiff now alleges that the Defendant knowingly misstated and misrepresented his medical condition, business activities, and recreational activities, and made false declarations and material omissions in claim forms, monthly progress reports, and other documents he submitted to the Plaintiff. Plaintiff alleges that Defendant's misstatements, misrepresentations, and omissions were knowingly made in bad faith in order to secure insurance benefits from the Plaintiff. Plaintiff submits that its reliance on Defendant's declarations were material to Plaintiff's determination that Defendant was totally disabled and that payment of disability benefits was required.

On March 24, 1993, Plaintiff filed its complaint alleging damages of $84,000 for insurance claim fraud and requesting a declaration that the disability policy issued to the Defendant lapsed for nonpayment of premiums in January of 1991 and that the Plaintiff is no longer liable to the Defendant thereunder. Defendant, on June 1, 1993, filed his answer, affirmative defenses and ten count counterclaim. In his Counterclaim, the Defendant alleges Breach of Contract (Count I), Intentional Interference with Contractual Relations (Count II), Intentional Infliction of Emotional Distress (Count III), Bad Faith (Count IV), Violation of the Unfair Trade Practices and Consumer Protection Law (Count VI), Misrepresentation or Fraud (Count VII), Slander (Count VIII), Libel (Count IX) and Punitive Damages (Count X).

In the Motion to Dismiss presently before the Court, the Plaintiff alleges that Counts III, VI, VII and X should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because: Count III fails to satisfy the pleading requirements outlined in the relevant caselaw; Count VI does not allege a proper private cause of action; Count VII fails to satisfy the pleading requirements under the Federal Rules of Civil Procedure; and Count X fails to state a cause of action.

By way of its Motion to Strike which is also now before the Court, the Plaintiff claims that: (1) Defendant's denials based upon lack of knowledge or information in paragraphs 104, 106–109, 111, 113, 115–117, 121–129, 132–146, 148–161 and 213–214 of Defendant's Answer are insufficient responses to the allegations in Plaintiff's Complaint; (2) Defendant's denials as conclusions of law as to paragraphs 6, 10–71, 74–88, 91–95, 98–99, 102–104, 118 and 130 of Plaintiff's complaint are inappropriate because Plaintiff's allegations are purely factual; (3) Defendant's references in paragraphs 6, 9–71, 74–95, 98–99, 102–104 and 118 to "writings" which "speak for themselves" should be stricken and/or deemed admissions of the pleaded contents of all documents referenced because such allegations constitute admissions and not denials; and (4) Defendant's references to "strict proof, if relevant, is demanded at trial" which appear in paragraphs 1, 3, 6–7, 10–95, 98–161, 163, 205–217 should be stricken because they do not comport with pleading requirements.

Defendant opposes Plaintiff's Motions with the exception of conceding that Count X of the Counterclaim should be dismissed with permission to add punitive damages to the wherefore clauses in the other Counts.

## DISCUSSION
### I. STANDARDS GOVERNING MOTIONS TO DISMISS

 A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is the appropriate method in which to challenge the legal sufficiency of a claim. The test applied to determine the legal sufficiency of a claim is whether it appears beyond a doubt that the claimant can prove no facts which would

support the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3rd Cir.1992) (quoting *Shubert v. Metrophone, Inc.*, 898 F.2d 401, 403 (3rd Cir.1990)). In determining whether to grant a 12(b)(6) motion, the court focuses on the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In reviewing the pleadings and other material of record, the court must accept as true all of the matters pleaded and all reasonable inferences that can be drawn therefrom must be construed in favor of the nonmoving party. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990).

## II. SUFFICIENCY OF DEFENDANT'S COUNTERCLAIM

### A. COUNT III—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The gravamen of the tort of intentional infliction of emotional distress is "outrageous" conduct by the tort-feasor. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 991 (Pa.1987). Outrageous conduct is that which would make the average member of the community exclaim, "Outrageous!" *Kazatsky*, 527 A.2d at 991 (quoting Restatement (Second) of Torts § 46, Comment (d) (1965)). Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not considered outrageous conduct. *Id.* A threshold requirement to determine whether conduct has reached the necessary level of outrage is an allegation of physical injury or harm. *Abadie v. Riddle Memorial Hospital*, 404 Pa.Super. 8, 589 A.2d 1143, 1146 (Pa.Super.1991) (citing *Kazatsky*, 527 A.2d at 995). In *Abadie*, the court denied the claim of intentional infliction of emotional distress because the complaint failed to allege any physical harm, injury or illness occurring as a result of the defendant's conduct. *Abadie*, 589 A.2d at 1146.

■ The Defendant cites several cases which, he argues, have held that there is no physical injury requirement for the tort of intentional infliction of emotional distress. However, a more careful reading of the cases reveals that the courts have made exceptions to the physical injury requirement only in specific circumstances. In *Hackney v. Woodring*, 424 Pa.Super. 96, 622 A.2d 286, 290 (1993), the court stated that the requirement to establish severe distress is diminished with a greater level of outrageous conduct. In permitting recovery for intentional infliction of emotional distress without a showing of physical injury, *Hackney* focused on the alleged conduct, which in that case was sexual harrassment and abuse, and held that "conduct that deserves the label 'outrageous' is outrageous precisely because it tends to produce distress in normally constituted persons." *Id.* Therefore, distress can be inferred from the conduct. *Id.*

In *Angus v. Shiley, Inc.*, 989 F.2d 142, 147 (3rd Cir.1993), the court did not eliminate the physical injury requirement, but merely stated that other courts had permitted causes of action for intentional infliction of emotional distress without a physical injury allegation where the wrongful conduct was either aimed specifically at the plaintiffs or would most likely have a special impact on them as opposed to a larger group of people. In denying recovery in light of the fact that plaintiff did not allege a direct physical injury, *Angus* cited cases involving conduct which had been found to have risen to the level of outrageous conduct required in cases such as *Hackney*. *See Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118, 121–122 (1979) (involving a defendant who allegedly assisted another person who killed the plaintiff's son to conceal the body); *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236, 1238–39 (1981) (involving a defendant whose employees were alleged to have fabricated records to suggest that the plaintiff had killed a third party and caused criminal charges to be brought on plaintiff); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3rd Cir.1979) (involving allegations that the defendant's team physician falsely stated to the press

that plaintiff suffered from a potentially fatal disease).

Here, we find that Plaintiff's alleged conduct does not rise to the same level of outrage as that suffered in the above cases such as would eliminate or diminish the requirement that physical injury as a result of the alleged conduct be alleged. Therefore, the Defendant's intentional infliction of emotional distress claim is dismissed for failure to state a cause of action under Pennsylvania law.

## B. *COUNT VI—UNFAIR INSURANCE PRACTICES*

■ Count VI of Defendant's Counterclaim attempts to state a claim for relief under the Pennsylvania Unfair Insurance Practices Act ("UIPA"). Act of July 22, 1974, P.L. 589, 40 Pa.S.A. §§ 1171.1 et seq. The UIPA was enacted to curb unfair or deceptive practices in the insurance industry. *Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427, 429 (1986). The UIPA's provisions are enforced by the Insurance Commissioner of the Commonwealth of Pennsylvania. 40 Pa. S.A. § 1171.7. The UIPA vests the Insurance Commissioner with the power to investigate specifically defined acts and practices of insurers. *Pekular*, 513 A.2d at 433. It is well settled, however, that the UIPA does not provide a private citizen with a cause of action against an insurer. *Lombardo v. State Farm Mutual Automobile Insurance Co.*, 800 F.Supp. 208, 212 (E.D.Pa.1992).

■ However, the UIPA is not the sole and exclusive deterrent against unfair insurance practices and the UIPA does not preempt the Unfair Trade Practices and Consumer Protection Law. 73 Pa.S.A. §§ 201–1 et seq.; *Pekular*, 513 A.2d at 434. Defendant's Counterclaim includes Count IV for Bad Faith under 42 Pa.C.S.A. § 8371, which was enacted to provide private citizens with a cause of action for bad faith conduct by insurers, and Count V for violation of the Unfair Trade Practices and Consumer Protection Law under 73 Pa.S.A. §§ 201–1 et seq., which provides a private cause of action against an insurer for unfair or deceptive acts or practices. Accordingly, the Defendant's claim will go forward on Counts IV and V, but Count VI will be dismissed.

## C. *COUNT VII—MISREPRESENTATION OR FRAUD*

■ A claim of misrepresentation or fraud must, in accordance with Federal Rule of Civil Procedure 9(b), state with particularity the circumstances which bring rise to the claim of fraud. In determining the sufficiency of a claim for misrepresentation-or fraud, the most basic consideration is whether the necessary degree of detail was provided to give the adverse party adequate notice and the ability to prepare a responsive pleading. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure, Civil 2d,* § 1298 (1990). Rule 9(b) does not require date, time and place of fraudulent acts, provided the claimant supplies other means of precision and substantiation. *U.S. v. Kensington Hospital*, 760 F.Supp. 1120, 1125 (E.D.Pa.1991). The purpose of Rule 9(b) is to give the adverse party fair notice of the charges. *Id.*

■ Applying Fed.R.Civ.P. 9(b) to the instant case, we find that Defendant's Counterclaim for Misrepresentation or Fraud fails to provide the Plaintiff with time, dates or places of alleged fraudulent acts. Defendant's Counterclaim alleges that "[a]t all times, this plaintiff engaged in consistent course of conduct throughout this state and other states, of depriving people of disability benefits.... At all relevant times plaintiff intended by its actions to deceive and defraud [defendant]." The Defendant does not provide any other information which gives Plaintiff fair notice as to the fraudulent acts alleged. Defendant's Counterclaim is thus vague and too general and does not meet the particularity requirement of Rule 9(b). However, this Court shall give the Defendant an opportunity to replead Count VII with particulars regarding date, time and place or other particulars sufficient to give the Plaintiff fair notice regarding the alleged fraudulent schemes. In addition, the Defendant must be sure to plead the elements of fraud. Accordingly, Plaintiff's Motion to Dismiss Count VII of Defendant's Counterclaim is granted but with leave to replead Count VII within twenty (20) days of the date this Memorandum and Order is entered.

### D. COUNT X—PUNITIVE DAMAGES

Defendant's Counterclaim for Punitive Damages in Count X is dismissed following agreement by both parties. Defendant has requested the opportunity to amend the wherefore clauses to add a prayer for Punitive Damages in the counts where appropriate. As stated in the opening paragraphs of the Memorandum, Defendant's request will be partially granted.

Pennsylvania has adopted the principles of the Restatement of Torts (Second) § 908(2) which governs punitive damages. *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 533 A.2d 436, 447 (1987). Restatement of Torts (Second) § 908(2) provides that:

> [p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended and the wealth of the defendant.

*Id.* The pleadings must therefore allege facts sufficient to demonstrate evil motive or reckless indifference to the rights of others. *McDaniel,* 533 A.2d at 447–448. In this case, Mr. Levithan contends that the Plaintiff attempted to blackmail him to give up his rights under the insurance policy by contacting the Defendant's doctors and advising them that Mr. Levithan was believed to be engaging in fraudulent conduct and that Plaintiff made statements to third persons with the intent of labeling Defendant "a fraud." Defendant has thus alleged sufficient facts in Counts II, VIII and IX to support a claim for punitive damages. As for Count IV for Bad Faith under 42 Pa.C.S.A. § 8371, the statute permits recovery for punitive damages. Therefore, this Court grants the Defendant leave to amend Counts II, IV, VII, VIII and IX.

With respect to Count I for Breach of Contract, the purpose of contract damages is to compensate the injured party and not to punish the breaching party. Therefore, compensatory damages are the only appropriate remedy. As for Count V, the Unfair Trade Practices and Consumer Law provides solely for actual damages with a private cause of action. 73 Pa.S.A. § 201–9.2. Consequently, Defendant's request for leave to amend Counts I and V of his Counterclaim to include claims for punitive damages is denied.

### III. STANDARDS GOVERNING MOTIONS TO STRIKE

A motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure is the proper method to eliminate matters in pleadings which are found to be redundant, immaterial, impertinent, or scandalous. 5A Wright & Miller, § 1380 at 644. A motion to strike is also the appropriate procedure to object to an insufficient defense. *Id. See U.S. v. Marisol,* 725 F.Supp. 833 (M.D.Pa. 1989). In order to succeed on a motion to strike, the moving party must show that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that the moving party is prejudiced by the presence of the allegations in the pleading. *Id.* at 649–650. However, motions to strike are generally viewed with disfavor. *Marisol,* 725 F.Supp. at 837. Motions to strike are often not granted if there is an absence of a showing of prejudice to the moving party. 5A Wright & Miller, § 1381 at 672. Here, the Plaintiff's Motion to Strike deals with striking various portions of Defendant's Answer.

First, the Plaintiff requests that Defendant's denials for lack of knowledge or information sufficient to form a belief in paragraphs 104, 106–09, 111, 113, 115–17, 121–29, 132–46, 148–61 and 213–14 of Defendant's Answer be stricken on grounds that the Defendant did in fact have the personal knowledge or information to form a belief as to the averments in Plaintiff's Complaint. However, a denial based on lack of knowledge or information sufficient to form a belief is proper when the pleader lacks sufficient data to justify his interposing either an honest admission or a denial of an opponent's averments. 5 Wright & Miller, § 1263 at 393. A court may strike portions of the pleading if bad faith is found to underlie the

denial or if the party intended to make the pleading evasive. *Id.* at 392. Insofar as the existing record in this case is insufficient to show that Defendant was acting in bad faith, with evasive intentions, Plaintiff's Motion to Strike Defendant's denials for lack of knowledge or information in paragraphs 104, 106–09, 111, 113, 115–17, 121–29, 132–46, 148–61 and 213–14 is denied. Likewise, there has been no showing that the Plaintiff is unduly prejudiced by Defendant's responses. At best, the Plaintiff has been merely challenged to prove the factual issues at a hearing.

Plaintiff next requests this Court to strike Defendant's responses to paragraphs 6, 10–71, 74–88, 91–95, 98–99, 102–03, 118 and 130 of Plaintiff's Complaint in which the Defendant alleges that Plaintiff's averments are conclusions of law and do not require a reply. Upon review of the above paragraphs in Plaintiff's Complaint, this Court finds that Plaintiff's averments in paragraphs 6, 10–71, 74–88, 91–95, 98–99, 102–03, 118 and 130 are not conclusions of law, but are factual allegations which require a response by the Defendant. Therefore, this Court will strike those paragraphs and grant twenty (20) days leave to Defendant to file an amended answer.

Plaintiff also requests that the responses in paragraphs 6, 9–71, 74–95, 98–99, 102–04 and 118 of Defendant's Answer in which the Defendant alleges that the writings speak for themselves be stricken as such responses do not deny or admit the allegations in Plaintiff's Complaint. This Court finds that such responses are denials of the Plaintiff's characterization and representation of the writings. Therefore, this Court will deny Plaintiff's Motion to Strike these portions and will not treat Defendant's responses as admissions of the writings and their pleaded contents.

Lastly, Plaintiff requests that the references to "strict proof" which appear in paragraphs 1, 3, 6–7, 10–95, 98–161, 163 and 205–17 of Defendant's Answer be stricken as such a demand does not exist under the Federal Rules of Civil Procedure. However, the Plaintiff has not cited to any case in the Third Circuit which supports such a position. The Defendant is putting the Plaintiff to his proofs on those matters on which Plaintiff carries the burden. Therefore, this Court will not strike Defendant's responses of "strict proof."

### Conclusion

For the foregoing reasons, we find that Counts III, VI and X of Defendant's Counterclaim are dismissed and Defendant is granted leave to replead Count VII. The Court also finds that paragraphs 6, 10–71, 74–88, 91–95, 98–99, 102–03, 118 and 130 are to be stricken from Defendant's Answer with twenty (20) days leave to amend. As for the remainder of Plaintiff's Motion to Strike, it is denied.

An appropriate order follows.

### ORDER

AND NOW, this 22nd day of October, 1993, upon consideration of the Motions of Plaintiff Great West Life Assurance Company to Dismiss Counts III, VI, VII and X of Defendant Mark Levithan's Counterclaim pursuant to Fed.R.Civ.P. 12(b)(6), and to strike various responses in Defendant's Answer, it is hereby ORDERED that the Motion to Dismiss is GRANTED in part and DENIED in part, and Defendant will be granted leave to amend Count VII, and that the Motion to Strike is GRANTED in part and DENIED in part, and paragraphs 6, 10–71, 74–88, 91–95, 98–99, 102–103, 118 and 130 of Defendant's Answer will be stricken, and Defendant will be granted leave to amend his Answer.